IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:12-cv-00005-FL

| | | |
|---|---|---|
| EDWIN SCHWINN III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SHAPIRO AND INGLE, LLP, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the motion to dismiss of defendant Shapiro and Ingle, L.L.P. (DE # 6). The issues have been fully briefed and are ripe for ruling. For the reasons stated below, the court will grant in part and deny in part the motion to dismiss.

## STATEMENT OF THE CASE

Plaintiff initiated this action on January 9, 2012, by filing a complaint alleging that defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §§ 75-50, *et seq.* Defendant, after receiving an extension of time, responded to the complaint on March 1, 2012, by filing the instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On March 16, 2012, the court issued the initial order regarding planning and scheduling, which was subsequently stayed pending ruling on the motion to dismiss.

## STATEMENT OF THE FACTS

Plaintiff is a resident of Atkinson, North Carolina, and defendant is a North Carolina limited liability partnership with its principal place of business in Charlotte, North Carolina. Plaintiff brings this action as Edwin J. Schwinn III and alleges that defendant mailed three identical letters dated

October 24, 2011, evidencing his default on a loan secured by real property and containing various statutory pre-foreclosure notices, which were addressed as follows:

Edwin J. Schwinn
144 Ferris Dr.
Atkinson, NC 28421;

Edwin J. Schwinn
4641 Masonboro Loop Rd.
Wilmington, NC 28409; and

Edwin J. Schwinn
110 Hawkins Dr.
Aberdeen, MD 21001.

Plaintiff alleges that the first letter was mailed to his residence, the second letter was mailed to his mother's residence, and the third letter was mailed to his son's residence. The letters indicate that "Edwin Schwinn" is the mortgagor and that the address of the real property securing the alleged debt is 144 Ferris Dr., Atkinson, NC 28421 (the "Ferris Drive Property"), which is alleged to be plaintiff's residence. Plaintiff further alleges that, as a result of the letters being mailed to the residences of plaintiff's mother and son, the alleged debt was published and disclosed to them and that plaintiff suffered personal humiliation, embarrassment, mental anguish, and emotional distress. Plaintiff seeks $1,000.00 in statutory damages for each violation of the FDCPA and $4,000.00 in statutory damages for each violation of the NCDCA, as well as reasonable attorney's fees and costs.

**COURT'S DISCUSSION**

**I.     Standard of Review**

Rule 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a 12(b)(6) motion, the court's consideration is limited to only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Generally, "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may consider certain matters outside the pleadings, including matters of which a court may take judicial notice, on a Rule 12(b)(6) motion without converting it into one for summary judgment. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 & Supp. 2007)). A court may take judicial notice of matters in the public record. See Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (citing Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986)). Furthermore, it is well-settled that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir.1999)).

II. **Analysis**

Plaintiff contends that the mailing of letters by defendant to him at his mother's and son's

3

respective residences violated the FDCPA and the NCDCA. As an initial matter, the court must determine whether it may appropriately consider the letters referenced in plaintiff's complaint and attached as exhibits to defendant's motion to dismiss without converting the motion to one for summary judgment. The letters are integral to plaintiff's claims and are explicitly relied on in the complaint. See Trigon Healthcare, 367 F.3d at 234. Moreover, plaintiff in his response to the motion to dismiss again referenced the letters and did not make any objection to defendant's presentation of the letters or to their authenticity. See id. Accordingly, the court will consider the letters without converting the motion to one for summary judgment.

### A. Plaintiff's Claims for Violation of the FDCPA

Plaintiff alleges that defendant violated the FDCPA, specifically §§ 1692b(1), (2) and §1692c(b), by communicating about his alleged debt with his mother and son without his permission. Defendant contends that it did not communicate with the mother and son regarding plaintiff's debt, because the letters were addressed to plaintiff and not to the mother and son. The court will consider each of the alleged violations is turn.

#### 1. Section 1692b Claims

Section 1692b is entitled "Acquisition of location information" and provides, in relevant part, as follows:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—
>
> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
> (2) not state that such consumer owes any debt[.]

15 U.S.C. § 1692b. For purposes of the FDCPA, "location information" is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. §

4

1692a(7).

Plaintiff alleges that defendant violated § 1692b(1) by identifying the name of defendant's company, without having been expressly requested to do so, in a communication with a third party. Plaintiff also alleges that defendant violated § 1692b(2) by communicating to a third party that plaintiff owes a debt.

Section 1692b pertains by its express terms to a debt collector's communications with third parties, i.e., not the consumer, "for the purpose of acquiring location information about the consumer[.]" 15 U.S.C. § 1692b. The content of the letters at issue reveals that they were for the purpose of providing a pre-foreclosure notice and statement of debt to plaintiff and not for the purpose of acquiring location information about plaintiff. See Def.'s Mot. to Dismiss Ex. A-C. Furthermore, plaintiff makes no allegation in his complaint that defendant was communicating with his mother and son for the purpose of acquiring his location information. Accordingly, plaintiff has failed to state a claim upon which relief can be granted under 15 U.S.C. §§ 1692b(1) and (2).

### 2. Section 1692c Claim

Section 1692c(b) pertains to a debt collector's communications with third parties and provides as follows:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). A "communication" is defined for purposes of the FDCPA as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

5

The letters at issue contain the following subject line in bolded letters, "**NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. SECTION 1692 et seq. AND STATEMENT OF DEBT PURSUANT TO N.C.G.S 45-21.16(c)(5a),**" followed by the statement that defendant "has been retained to initiate a foreclosure proceeding to foreclose the mortgage on the [Ferris Drive] property," and additional information regarding the amount of the alleged debt, the creditor, and various rights and obligations of the consumer related to the alleged debt. Plaintiff in his complaint contends that defendant violated § 1692c(b) by mailing the letter to plaintiff at two addresses, those of his mother and son, which resulted in unauthorized communications with the mother and son regarding plaintiff's alleged debt. Defendant contends in its motion to dismiss that it did not communicate with plaintiff's mother and son, because the letters were addressed to plaintiff, and that it was merely attempting to provide plaintiff with statutory notices required by the FDCPA and NCDCA. Defendant also contends that it was not unreasonable for it to send a letter to plaintiff at the Wilmington address because public records indicate that plaintiff receives tax bills in connection with the Ferris Drive Property at the Wilmington address and that, in any event, plaintiff's family should not have opened letters addressed to plaintiff.

In response to defendant's motion to dismiss, plaintiff contends that the letters were not, in fact, addressed to plaintiff, because they were addressed to "Edwin J. Schwinn" and plaintiff's name is "Edwin J. Schwinn III." Plaintiff also argues that it was not unreasonable for his son to open the letter, because his son's name is "Edwin J. Schwinn IV" and plaintiff has never been associated with his son's address in Aberdeen, Maryland. Plaintiff finally argues that any authorization he gave to the county to send tax bills to the Wilmington address did not authorize defendant to send communications to that address.

In reply, defendant contends that the additional fact regarding plaintiff's son's name is not

6

in the complaint and may not be considered, but that even if considered it would not change the result under the reasoning of Segal. Defendant also submits the fact that the name on the note executed by plaintiff is simply "Edwin Schwinn." See Def.'s Reply Ex. A. Defendant finally argues in its reply that it should be given some latitude to attempt to communicate with a debtor at a relative's address and that adopting plaintiff's position would encourage collusion and the filing of baseless litigation against debt collectors by debtors and their families.

Defendant relies heavily on the case of Segal v. Nat. Action Fin. Servs., Inc., No. 8:04 CV 2388 T 30MAP, 2006 WL 449176, at *7 (M.D. Fla. Feb. 22, 2006). In Segal, the plaintiff alleged that the defendant violated § 1692c(b) when it sent a dunning letter to her step-son's residence. Id. The letter was addressed to the plaintiff, Karen Segel, and was the only letter sent to the step-son's address. Id. The court reasoned that "it was improper for anyone other then Karen Segel to open the . . . letter without her permission" and observed that "[t]he record is devoid of evidence as to any other indicators on the envelope that would have 'communicated' to a third party that such letter was connected with the collection of a debt against Karen Segel." Id. The court concluded that "[t]he act of sending one letter addressed to a consumer but sent to the wrong address does not alone appear to indicate a violation by Defendant of §1692c(b)" and that the evidence did not support a § 1692c violation. Id.

The Segal case is distinguishable in two significant ways: (1) Segal was decided at the summary judgment stage; and (2) Segal involved one letter sent to the plaintiff at an incorrect address, that of her step-son. On a motion to dismiss, the court may not weigh the evidence as did the Segal court on motion for summary judgment, but may consider only whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 570). Here, plaintiff alleges that

7

defendant sent the identical letter to plaintiff at three addresses–his residence, his mother's residence, and his son's residence–whereas in Segal, the defendant sent one letter addressed to the plaintiff but mailed to the wrong address. The court must draw reasonable inferences in favor of plaintiff, and there is no allegation in the complaint to support an inference that defendant simply used the wrong address where defendant mailed the letter to plaintiff at three addresses, one of which being plaintiff's residence and the other two being addresses of plaintiff's relatives, resulting in the communication of information to third parties regarding plaintiff's alleged debt. This is particularly so where "communication" is defined broadly to include the conveying of information both "directly *or indirectly*" to any person. 15 U.S.C. § 1692a(2) (emphasis added). Therefore, Segal does not support dismissal of plaintiff's § 1692c(b) claim on a 12(b)(6) motion for failure to state a claim.

Defendant next argues that it was not unreasonable to send a letter addressed to plaintiff to the Wilmington address, because it is the address associated with the Ferris Drive Property in the county public tax records. See Def.'s Mot. to Dismiss Ex. D. Defendant does not provide an explanation as to why it sent the letter to the Aberdeen, Maryland address. Plaintiff counters that any authorization he gave to the county to send tax bills to the Wilmington address did not authorize defendant to send communications to that address. Defendant's argument goes to the merits of plaintiff's claim rather than the sufficiency of pleading. Therefore, while the reasonableness of defendant's actions may be relevant at the summary judgment or trial stage, it provides no basis for dismissal at this time. See Martin, 980 F.2d at 952 ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). Likewise, plaintiff's contention that it was not unreasonable for his son to open the letter, because his son's name is "Edwin J. Schwinn IV" and the letter was addressed to "Edwin J. Schwinn," goes to the merits and not the sufficiency of the

8

complaint.

Finally, defendant makes two policy arguments. First, defendant contends that it should be entitled to some latitude where it is merely attempting to provide statutorily mandated pre-foreclosure notice to plaintiff. Yet, the FDCPA clearly contemplates that debt collectors may seek to obtain location information regarding a consumer, see 15 U.S.C. § 1692b, which begs the question of whether the latitude sought by defendant–to send a letter to a consumer at multiple addresses that the debt collector believes *may be* associated with the consumer–is reasonable or necessary. Defendant also suggests that if the court were to adopt plaintiff's position that "one allegedly mistaken written communication to a family member's address" could result in liability under the FDCPA, it would incentivize debtors and their families to "collude against the debt collector and file baseless litigation." Def.'s Reply at 2. Defendant misconstrues the allegations of the complaint where there is no allegation of mistake, and defendant mailed the letter to plaintiff at three different addresses, only one of which being the plaintiff's residence. Further, the court rejects defendant's notion that the floodgates will be opened for collusion and baseless litigation if the § 1692c(b) claim is allowed to proceed, as this appears to be a somewhat unique set of facts.

Therefore, having considered the allegations of the complaint in the light most favorable to plaintiff, the court concludes that plaintiff has sufficiently stated a claim under § 1692c(b).

### B. Plaintiff's Claim for Violation of the NCDCA

Plaintiff contends that defendant violated § 75-53(1) of the NCDCA, which prohibits a debt collector from unreasonably publicizing information, including unauthorized communications with

9

Case 7:12-cv-00005-FL Document 16 Filed 03/13/13 Page 9 of 12

a third party, regarding a consumer's debt.[1] N.C. Gen. Stat. § 75-53(1). Defendant argues that it did not communicate with a third party regarding plaintiff's alleged debt. For the same reasons stated above with respect to the § 1692c claim under the FDCPA, the court concludes that dismissal on this basis is not appropriate. Notwithstanding, there appears to be an alternate basis for dismissal not raised by defendant, the "learned profession" exemption to the NCDCA.

The North Carolina Court of Appeals has held that a claim under the NCDCA, alleging improper practices in the specific context of debt collection, must also satisfy the requirements of a more general claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). See Reid v. Ayers, 138 N.C. App. 261, 265, 531 S.E.2d 231, 235 (2000). See also Ross v. F.D.I.C., 625 F.3d 808, 817 (4th Cir. 2010) (citing Davis Lake Cmty. Ass'n v. Feldmann, 138 N.C. App. 292, 530 S.E.2d 865, 868 (2000)). Under the NCUDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75.1-1(a). The statute goes on to state that "[f]or purposes of this section, 'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." Id.

---

[1] North Carolina General Statute § 75-53(1) provides as follows:

No debt collector shall unreasonably publicize information regarding a consumer's debt. Such unreasonable publication includes, but is not limited to, the following:
(1)    Any communication with any person other than the debtor or his attorney, except:
    a.    With the written permission of the debtor or his attorney given after default;
    b.    To persons employed by the debt collector, to a credit reporting agency, to a person or business employed to collect the debt on behalf of the creditor, or to a person who makes a legitimate request for the information;
    c.    To the spouse (or one who stands in place of the spouse) of the debtor, or to the parent or guardian of the debtor if the debtor is a minor and lives in the same household with such parent;
    d.    For the sole purpose of locating the debtor, if no indication of indebtedness is made;
    e.    Through legal process.

N.C. Gen. Stat. § 75-53(1).

§75.1-1(b). The Reid court held that the practice of law is a learned profession and that debt collection on behalf of a client is a professional service often performed by law firms and attorneys. 531 S.E.2d at 235. As a result, the NCDCA does not provide a cause of action against law firms and their attorneys engaged in the collection of debts on behalf of their clients. Id. at 232; Bryant v. Wells Fargo Bank, Nat. Ass'n, 861 F. Supp. 2d 646, 669 (E.D.N.C. 2012); Godfredson v. JBC Legal Group, P.C., 387 F. Supp. 2d 543, 548 (E.D.N.C. 2005); Culver v. JBC Legal Group, P.C., No. 5:04-cv-389-FL, 2005 WL 5621875, at *4-5 (E.D.N.C. June 28, 2005).

The defendant in this case is a law firm. See Def.'s Mot. to Dismiss Ex. A ("The law firm of Shapiro and Ingle, L.L.P. has been retained to initiate a foreclosure proceeding to foreclose the mortgage on the above-referenced property."). Plaintiff alleges that defendant violated § 75-53(1) of the NCDCA while attempting to collect a debt. See Compl. ¶ 14(a). Accordingly, defendant is a member of a learned profession engaged in the rendering of professional services as defined by the Reid court and is entitled to the learned profession exemption from the NCDCA. Therefore, plaintiff has failed to state a claim upon which relief can be granted under § 75-53(1).

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

(1) Defendant's motion is GRANTED with respect to plaintiff's claims under 15 U.S.C. § 1692b and North Carolina General Statute § 75-53(1) and those claims are DISMISSED WITH PREJUDICE; and

(2) Defendant's motion is DENIED with respect to plaintiff's 15 U.S.C. § 1692c(b) claim.

Furthermore, the court previously stayed its March 16, 2012 Initial Order Regarding Planning and Scheduling pending ruling on the motion to dismiss. The stay is now lifted and the parties shall

conduct the Rule 26(f) conference on or before twenty-one (21) days from the date of entry of this order. In all other regards, the Initial Order remains in effect and, the parties shall refer to it for further planning and scheduling deadlines and information.

SO ORDERED, this 11th day of March, 2013.

LOUISE W. FLANAGAN
United States District Judge